VICTOR BURTHE, Administrator, *v.* P. FORTIER.                    15    9
                                                                f121   571

The sale of property bounded by an avenue, in a plan of a town, which is referred to in the act of
sale, as designating the position of the property sold, is a dedication of the avenue to public use,
and the vendee, together with the public generally, have the right to use the whole width of the
avenue.

APPEAL from the Fifth District Court of New Orleans, *Eggleston, J.*
*Durant & Hornor,* for plaintiff and appellant. *Randall Hunt,* for defendant.

BUCHANAN, J. Two appeals in two suits of the same title, are included in this transcript, and have been submitted to us for decision together.

The first, being No. 11,889 of the docket of the Fifth District Court of New Orleans, is an injunction sued out by plaintiff to restrain defendant from demolishing, removing, or in any wise injuring the fences of the Burthe plantation on Tchoupitoulas street, and on the Carrollton railroad. Although thus general in its terms, the controversy between these parties relates in reality only to fences erected by plaintiff across Henry Clay Avenue, a street upon the plan of Burtheville, made by *Hédin,* a surveyor or civil engineer, in 1857; which plan was referred to in a sale, under private signature, from plaintiff to defendant, of land having the said avenue for one of its boundaries.

On the part of the defendant, it is contended that the fences erected by plaintiff across this avenue, obstructed the defendant's use of the avenue, and are a direct violation of his (defendant's) right of passage upon the same; a right derived not only from the dedication to public use, implied, as he contends, from the sale of land with reference to the plan, but which is, moreover, specially guaranteed to the defendant by his contract of purchase from plaintiff.

This controversy has been very much simplified, by an emphatic and unqualified admission of counsel of plaintiff in his argument in this court, that defendant has a right to the uninterrupted use of Henry Clay Avenue; and by the further admission of plaintiff in argument, that if defendant can make use of his railroad in no other way than by removing the fences erected by plaintiff, in that case, plaintiff is bound to submit to the removal of those fences.

In order to understand this last admission, it must be observed, that the contract between these parties, includes not only a sale of land fronting on Henry Clay Avenue from the river to Levee street, but also a sale of the *exclusive* use of a space of twenty-five feet wide, in the centre of Henry Clay Avenue, for the construction of a railroad by defendant from the river Mississippi to the Carrollton Railroad; which said right of use constitutes, by the terms of the contract, a servitude upon the Henry Clay Avenue, in favor of the property sold to defendant.

These admissions reduce this part of the case to a question of fact, to wit, was the demolition of the fences across Henry Clay Avenue necessary to defendant's use and enjoyment of the said avenue?

As we understand the evidence, the plantation which plaintiff and his co-heirs inherited from their father, although divided into squares and lots, with intersecting streets, upon paper, still remained, at the time of plaintiff's sale to defendant, in the same state in which it was during the lifetime of plaintiff's father, that is

2

to say, enclosed with fences running in an unbroken line from the upper to the lower boundary of the plantation, upon the public road in front, and upon the Carrollton Railroad in the rear. The soil of Henry Clay Avenue was part of an extensive field, with nothing to distinguish it to the eye from the rest of the field. The fences which enclosed the field entirely barred the passage at either end of the avenue.

It is evident, then, that the removal of those barriers was indispensible to defendant's use of the avenue. Defendant notified plaintiff to remove them, which he neglected to do ; and plaintiff, about one month after such notice given, removed the fences at each end of the avenue, for a space of sixty feet, being somewhat less than the width of the avenue, according to the plan.

After the barriers of the Henry Clay Avenue had been thus removed by defendant, plaintiff proposed, by letter, to place a gate in his fence, at each end of the avenue. Defendant refused to accept this proposition, alleging that, by the contract, he had a right to the unobstructed use of the whole width of the avenue.

Upon this, plaintiff sued out the present injunction ; and immediately upon the same being granted, rebuilt his fences across the Henry Clay Avenue, without leaving any opening or any gate in the same, thus shutting out the defendant from all access to the avenue. We agree with the District Judge, that this injunction should be dissolved. The plaintiff now admits, as we have seen, the defendant's right to an unobstructed use of the avenue.

This admission seems hardly consistent with the allegations of the petition for injunction. But plaintiff's counsel argues, that a gate at each end of the avenue, is all that defendant can in reason require ; for that such gates would afford defendant free ingress and egress to and from the avenue.

Granting this to be true, for the sake of argument, where are the gates ? Plaintiff has made no gates, and defendant cannot make any without disobeying the injunction. It is nothing to the purpose, that defendant refused to authorize plaintiff to make the gates. Defendant had a perfect right to stand upon his contract, and to decline any proposed modification of that contract. But such refusal, however unreasonable and unneighborly it may have appeared to plaintiff, did not justify him in a plain and palpable violation of his contract. If he believed, in good faith, that gates in his fences upon the line of Henry Clay Avenue, satisfied the requirements of his contract with defendant, it was his duty to have made those gates, notwithstanding defendant's refusal, formally to sanction that proceeding. And this is all-important upon the question of damages ; for with gates open to ingress and egress of the avenue, defendant could not have pretended that the passage of the avenue was absolutely barred to him, although he might still have urged, that the passage was not such a one as he was legally entitled to. The correspondence of plaintiff with defendant, viewed in connection with his subsequent acts, amount to nothing more than this, that unless defendant will consent, in writing, to accept a passage of Henry Clay Avenue through two gates, he shall have no passage upon that avenue at all.

We have here an example of one of the most common of errors, that of exaggerating one's own rights, to the point of losing sight altogether of those of one's adversary.

Upon the question of right, under the contract between the parties, we also agree with the District Judge, that the law is in favor of the defendant. The sale of property bounded by Henry Clay Avenue, in a plan of Burtheville, which

is referred to in the sale, as designating the position of the property sold, is a dedication of the avenue to public use. The defendant has, therefore, in common with the rest of the community, the use of the whole width of Henry Clay Avenue, on either side of the reservation hereafter noticed, unobstructed by fences or gates; and he has, by the terms of his contract, the exclusive use or servitude of passage, as proprietor of the brick yard on the batture of Burtheville, of a space of twenty-five feet in width, in the centre of Henry Clay Avenue, from the river to the Carrollton Railroad, which space is reserved, in defendant's favor, from public use.

The sketch made by *D'Hémécourt*, annexed to the authentic act of sale before *Magner*, of the 1st of June, 1857, and the amended plan of *Hédin*, referred to in the *sous seing privé*, also annexed to that authentic act, are proof between these parties, of the situation and dimensions of Henry Clay Avenue.

In a supplemental petition, plaintiff alleges that there was error on his part in the sale to defendant, in this: that plaintiff supposed the public road in front of the Burthe plantation to be identical with Levee Street on the plan by which the land was sold to defendant; but that it was subsequently ascertained that the Levee Street of the plan was to the westward of the public road, by means whereof, the soil of the said public road between Bloomingdale and the Henry Clay Avenue fell within the boundary lines of the land purchased by defendant; and that defendant has taken advantage of this error to appropriate and destroy the fence between the Burthe plantation and the public road within the said limits. The petition claims that said fence did not pass to defendant under the sale, by reason of the error, and that defendant owes plaintiff the value of the fence, stated at six hundred dollars, for which he asks judgment.

Plaintiff also claims of defendant, in the same amended petition, the value of that portion of the fence of the plantation on the public road, which is above the Henry Clay Avenue (stated at six hundred dollars), on the ground that defendant has illegally and violently destroyed the said fence, although not on the land sold to him, *Fortier*, at all.

Defendant answers this supplemental petition, alleging that the fences therein mentioned belonged to himself; and denying the error alleged by plaintiff.

The sale of the land to defendant included all the buildings and improvements on the land. It is admitted that the boundary (westward) of the land given by the title (Levee Street on *Hédin's* plan of Burtheville) is west of the public road. The sale conveyed, therefore, the fence adjoining the road, as well as the soil of the road, within the limits, north and south, of the title. No attempt appears to have been made to prove the error of fact alleged in the supplemental petition.

As to the fence of the plantation on the public road above Henry Clay Avenue, it seems to be included in the general term " constructions généralement quelconques," of the second clause of the description of things sold, in the deed of sale. The word " *constructions* " in this connection, is used by the parties contracting, in a figurative sense, to signify " *choses construites*," a signification which the French Dictionary of the Academy (Paris, quarto edition, 1825,) does not give to the word, but which we know to be frequently given to it in popular parlance. It is our duty to give effect to the contract, according to the intention of the parties, as expressed intelligibly, although perhaps inaccurately. C. C. 1941.

Is a fence then an object that is embraced in the category of " *choses construites*," (things constructed)? It seems to us that it is. We conclude, therefore,

that the fences, within the limits described in the second clause of this contract, were conveyed by the same; and that defendant had the right to remove them.

The defendant, pleading in reconvention, claims of plaintiff damages for having obstructed Henry Clay Avenue. The proof in support of this claim relates principally to the additional expense incurred by defendant for the transportation of his bricks to market, beyond what such transportation would cost him per railroad.

We have seen that the plaintiff sold to defendant the exclusive use of twenty-five feet wide in the centre of Henry Clay Avenue from the river to the Carrollton Railroad, for the construction of a branch railroad connecting defendant's brick-yard with the Carrollton Railroad. It is proved that the defendant had commenced making his railroad, and that the same might have been finished in one month, when his operations were suspended by this injunction.

It is proved that defendant makes at his brick-yard 10,000 bricks per day. The cost of transporting bricks from defendant's brick-yard to buildings in town by cart is $3 25 per thousand. The cost of transporting them by the Carrollton Railroad would be $1 25 per thousand, making a difference of two dollars per thousand, or twenty dollars a day, in favor of the latter mode. This would amount to six thousand dollars in a year, counting three hundred working days in the year. Now, it is very true, that defendant has been prevented by the acts of plaintiff from completing his branch railroad, and thereby shut out from communication with the Carrollton Railroad by the Henry Clay Avenue; but it is in evidence, that plaintiff offered to defendant, by letter dated the 10th of June, 1857, (several months before this injunction), the use of an old railroad from the brick-yard to the Carrollton Railroad, made by plaintiff's father, until the completion of defendant's branch railroad in Henry Clay Avenue. The defendant was, therefore, not compelled to send his bricks to town by cart, as pretended; and the claim for damages on this score must be rejected.

Another cause of damage alleged by defendant is the injury done to his embankments in Henry Clay Avenue, by the cattle of plaintiff. The evidence of the amount of pecuniary damages arising from this cause is too vague to enable us to decide it satisfactorily.

The second of the appeals now before us for decision, is taken by plaintiff from the judgment in suit No. 12,174 of the docket of the Fifth District Court of New Orleans.

This is a suit to compel the defendant to remove certain buildings comprised in the two acts of sale of the 14th of April and 1st of June, 1857, mentioned above.

The clauses of the contract between the parties which are the subject of this suit, are as follows:

" 2o. Toutes les bâtisses et constructions généralement quelconques, qui se trouvent actuellement sur cette portion de la dite habitation comprise entre la Rue de la Levée, l'Avenue Henry Clay, la limite de la dite terre Foucher, et le fleuve. Bien entendu, que le dit *Fortier* aura le droit, s'il le juge à-propos, d'occuper ces bâtisses et constructions, et d'en jouir, sur les lieux-mêmes où elles se trouvent, tant que le fonds continuera d'appartenir aux parties de première part, et à leurs cohéritiers. Au cas de vente, par ces derniers, du fonds, ils devront en donner avis, au moins soixante jours d'avance, au dit *Fortier*, pour lui donner le temps d'enlever les bâtisses.

" 3o. La jouissance de toute cette partie de l'habitation D. F. Burthe, comprise

entre la Rue de la Levée, l'Avenue Henry Clay, la limite de la terre Foucher, et le fleuve, tant que les parties de première part et leurs cohéritiers seront propriétaires de cette portion de la dite habitation, ou ne la loueront pas, et ce, moyennant le paiement des taxes pour cette partie de l'habitation et l'entretien du chemin public par le dit *Fortier*."

The petition alleges that plaintiffs (*Victor Burthe* and *Léonce Burthe*) have leased the ground described in the 3d clause above copied, to a third person, and that they have given the notice of sixty days to defendant, required by the second clause; and concludes by praying for the removal of defendant's buildings.

The answer is a general denial, and a special plea that defendant has the right to retain his buildings on the ground in question, so long as plaintiffs remain proprietors of the soil upon which those buildings stand. No evidence of the lease seems to have been offered: but taking it for granted that the ground has been leased, as alleged, such letting does not justify the present action. The two clauses of the contract are perfectly distinct, and perfectly consistent. No lease of the land by plaintiffs can prejudice the defendant's right of possession and enjoyment of his buildings upon the land.

It is, therefore, adjudged and decreed, upon the appeal in suit No. 11,889 of the docket of the Fifth District Court of New Orleans, that the judgment of the said court in said suit be affirmed in all respects, except as regards the reconventional claim for damages; that the judgment awarding damages to defendant be reversed and annulled, and that there be judgment of nonsuit against defendant upon said reconventional demand for damages.

And it is further adjudged and decreed, upon the appeal in suit No. 12,174 of the docket of the Fifth District Court of New Orleans, that the judgment of the District Court be affirmed.

And it is further decreed, that the costs of these two appeals, included in one transcript in this court, be borne, one-half by *Victor Burthe*, administrator, and by *Léonce Burthe*, appellants; and one-half by *Polycarpe Fortier*, appellee; that the costs of the suits Nos. 12,174 and 11,889 in the District Court be borne by the appellants and plaintiffs; that the costs of the reconventional demand of defendant in the suit No. 11,889, claiming damages of plaintiff, be borne by defendant; and that the other costs of the District Court in said suit be paid by plaintiff and appellant.