## No. 261.

### CITY OF SHREVEPORT VS. A. DROUIN.

41 867
48 195
48 1115

1. A municipal corporation which seeks to compel the removal of a building which has existed for many years, on the ground that it rests upon ground dedicated to public use, carries the burden of clearly proving the dedication.

2. When the evidence produced to show the dedication is a map or plat, and the statements thereon are ambiguous or doubtful as to the extent of the dedication, recourse may be had to the contemporaneous and subsequent acts of the parties to show their intention and the construction put by them on the dedication.

3. A plain and positive intention to dedicate is an essential element of a dedication, and that intention must be shown by language or acts so clear as to exclude any other reasonable hypothesis, or, at least, to clearly convince the judicial mind.

4. Finding that the intention to dedicate to the extent claimed in this case is seriously doubtful on the face of the map and contradicted by the acts of the parties and the circumstances of the case, the claim is denied.

APPEAL from the First District Court, Parish of Caddo.
Taylor, J.

---

*A. D. Land*, City Attorney, for Plaintiff and Appellee:

1. This is a suit to remove part of a building and other obstructions from a public alley of the City of Shreveport.

2. Dedication of this alley as being of the uniform width of twenty feet is shown by a plat filed in office of parish judge of Parish of Natchitoches in 1837, by the original owners of the site of the town of Shreveport, which in 1839 was incorporated as "laid off and divided into lots" in 1837 — also by map filed by the defendant.

3. This dedication antedated the sale of the lot now owned by defendant, and the alley is entitled to its full quantity, and the deficit, if any, must fall on the lot. C. C. 846, 847.

4. Expressions of measurement are controlled by the plan. 17 L. 497; 26 Ann. 40. In this case the contention of defendant that his lot is entitled to a frontage of forty feet is shown by the plan to be erroneous. See opinion of district judge.

5. Defendant's building obstructs more than one-third of the alley and prevents its use for the ordinary purposes of a public alley in a city. Hence it should be removed.

---

*Young & Thatcher* for Defendant and Appellant:

That property may be dedicated to public use is a well established principle of the common law. * * * The importance of this principle may not always be appreciated, but we are in a great degree dependent on it for our highways and streets. * * * Dillon on Munic. Corp., Sec. 490.

An *intent* on the part of the owner to dedicate is absolutely essential, and unless such intention can be found in the facts and circumstances of the particular case, no dedication exists. When a plat is made and recorded, the requisite intention is *generally* indisputable. Same, Sec. 499.

The question whether land has been dedicated to public use *is one of* INTENT. The *intention* to dedicate is *absolutely essential*, and it should clearly and satisfactorily appear. *Animus dedecendi* is the vital principle. Am. and Eng. Encyclopædia o, Law, pp. 400 and 401, and cases there cited, a few of which we mention, viz: To sustain dedication, intention

of owners to dedicate, as well as an actual appropriation by the public must be shown. 21 Wis. 451.

Dedication cannot be made out without clear intent to dedicate on the part of the proprietor and an acceptance by the public. Lee vs. Lake, 90 Am., Dec. 220.

To constitute sufficient dedication there must be the *intention* on the part of the owner to *make the gift* and also an acceptance. Gentleman vs. Soule, 83 Am. Dec. p. 264.

In order to constitute a dedication for a public highway, there must be an *intention* to dedicate by the owner *clearly and unequivocally shown,* and an acceptance by the public. Mere evidentiary facts tending to show a dedication do not, of themselves, constitute the dedication. Shellhouse vs. State (Indiana), 2 N. E. Rep. 484.

The question of the *intent* to dedicate is the paramount one in all cases of disputed dedication. Am. and Eng. Encyclopædia of Law, Vol. 5, p. 402.

The burden of proving a dedication of land for a street is on the town. Nason City, Etc., vs. Town of Nason, 7 Am. and Eng. Corporation cases, p. 421.

Since dedication is the joint effect of intention of appropriation of land and acceptance by the public, no *presumption* of dedication *can be made, where circumstances exist which negative the presumption of intention.* Any act  *  *  *  of the owner, with the evident purpose of rebutting the intent to dedicate, will be, when established, conclusive to that end. Am. and Eng. Ency., Vol. 5, p. 409.

As against the original owner, the *intent to dedicate* must be made clear, and this intention is to be gathered from acts and declarations explanatory thereof, in connection with all the circumstances which surround and throw light upon the subject in each particular case. Ibid, p. 402.

*An explanatory note on a town plat, inconsistent with the plat and its courses and distances must give way to them.* Ibid, p. 406; 100 Ind. 463.

Where the proprietor of land lays out the same into building lots, with streets and alleys between them, and makes and records a plat thereof, he thereby dedicates such streets and alleys to public use. Fulton vs. Town of Dover (Delaware), 6 Cent, 848, cited in note in Am. and Eng. Ency., Vol. 5, p. 409.

There must be a *plain and positive intention to give,* and one equally plain and positive to accept; by analogy to other contracts, there must be a concurrence of two parties to pass the right. The positive assent by the owner and the actual use by the public  *  * must be shown. And when the dedication is not express, but to be inferred from the acts and acquiescence of the owner and the use by the public, *these must be such as to exclude every other hypothesis but that of dedication.* 3 Ann. 282; 19 La. 62; 7 Ann. 498; H. D. p. 1568, No. 3.

The dedication of property to public use must appear by evidence so conclusive as to exclude all idea of private ownership. 37 Ann. 497.

The dedication of property to public use need not be made in express terms. In case of doubt as to the EXTENT of the property dedicated the *contemporaneous and subsequent continuous construction of the dedication put upon it or accepted by both the public and the former owners of the property should remove the doubt.* 34 Ann. 1090.

If the works formerly constructed on the public soil consist of houses or other buildings which cannot be destroyed without causing signal damage to the owner of them, and these houses or other buildings merely encroach upon the public way, without preventing its use, they shall be permitted to remain, but the owner shall be bound when he rebuilds them, to relinquish that part of the soil or of the public way, upon which they formerly stood. C. C. Art. 862.

The opinion of the Court was delivered by

FENNER, J.   The City of Shreveport alleges that defendant, who is the owner of lot No. 13 in Block 40 of said city, has erected thereon a brick building, fence, etc., which extend beyond the line of his said lot and unlawfully encroach upon an adjoining public alley, obstructing the same unlawfully, and prays for a judgment to remove said obstruction.

The defendant admits ownership of the lot and building, but avers that the latter rests wholly within the lines of his lot and does not encroach upon the public alley.

Both parties agree as to the existence of a duly dedicated public alley, but they differ as to its width under the dedication thereof, the city claiming that it is twenty feet wide, while the defendant attributes to it a width of only ten feet.

The town of Shreveport was incorporated in 1839, and embraced a territory of 640 acres which had belonged to an association of individuals called the Shreveport Town Company, who, prior to and in view of its incorporation as a town, had divided a considerable part of it into squares, lots, streets and alleys.   A map is produced showing this division, which is admitted by both parties to operate a dedication to public use of the streets and alleys thereon depicted and described.

The dispute is as to the extent of the dedication.

The map represents over sixty squares, all of which, *except four*, are divided as exhibited in the following figure:

Four of the lots fronting on Texas street are divided as shown in the following figure, which exhibits square No. 40, in which the defendant's lot is situated:

On the margin of the map the following statements are made: "The lots in Shreveport are 40 feet front by 150 feet. The alleys are 20 feet wide."

It is admitted that all the squares are 320 feet square.

As applied to all the squares, except four, both the above statements on the margin of the map are perfectly true; all the lots are 40 feet front and all the alleys are 20 feet wide.

But when we come to the other four squares represented in the second diagram, it is manifest that both the statements cannot stand together, one or the other must give way.

It is mathematically impossible for all the lots fronting on Market and Edward streets to have 40 feet front and for the alley to have 20 feet width; for deducting from the 320 feet entire width of the square, the depth of the lots fronting Texas street or 150 feet, and there remain only 170 feet, which cannot contain four lot fronts of 40 feet each and a 20-foot alley.

The question is, which must control?

Must the reservation of 40-feet lots yield to the dedication of a 20-feet alley; or must the dedication yield to the reservation?

Considering that defendant received the lot as a 40-foot lot, under a chain of title running back more than forty years, in which it is several times expressly described of such dimensions, and that the occupancy by the brick building in controversy has continued for nearly as long, it certainly seems clear that the burden of proving dedication de-

volved on the city, and that if the title produced by her is ambiguous, the doubt must be construed against her.

The city produces no other proof of the original dedication than the map above described containing the ambiguous and contradictory marginal statements above referred to.

Is not the extent of the dedication intended manifestly doubtful?

Observe that under the construction of defendant the city will receive precisely the same amount of space for alley-ways, in these four squares as she does in all the other squares. The only difference is that instead of one 20-foot alley-way running through the whole square, a space of 20 by 320, she takes one alley of 20 by 160 and another transverse alley of 10 by 320.

Why should it be supposed that the owners intended to grant one-third more for alleys in these squares than in all the rest?

If such had been their intention, why should they have taken this additional space from the lots fronting on Market and Edward streets, rather than from the rear of the lots fronting on Texas street? What better reason has the city to claim the extra width of its alley from plaintiff, than from the proprietors of the Texas street lots? They have no better right to a depth of 150 feet than plaintiff has to a front of 40 feet.

But if owners did intend to reduce the front of these lots, why did they not reduce them all proportionally? The proprietors of all the other lots fronting on Market street enjoy, without dispute, their full frontage of 40 feet; and if the city's claim, set up at this late day, be allowed, the whole loss must fall on defendant and his lot must be reduced by one-fourth of its front.

There is absolutely nothing in the instrument of dedication to indicate an intention to cut off so huge a slice from this lot.

The extent of the dedication is not only fairly, but seriously, doubtful on the face of the instrument relied on to prove it.

We have held that "in case of doubt as to the extent of the property dedicated, the contemporaneous and subsequent continuous construction put upon it or accepted by both the public and the former owners of the property, should serve to remove the doubt." McNeill vs. Hicks, 34 Am. 1090.

Applying this test, we find that the members of the Town Company partitioned the property among themselves in 1843, and this lot fell to Jenkins. He sold in January, 1845, by the simple description of lot 13 in block 40, referring, however, to the plat which gave it, with all other lots, a frontage of 40 feet on Market street by a depth of 150 feet. In

1849 his vendee sold it by an express description of these dimensions. In subsequent sales it was described simply by numbers of lot and block, and since 1869, by same description with the addition the dimensions of 40 by 150, "more or less."

Thus it appears that, after the dedication, the owners continuously treated this lot as having these dimensions.

It further appears that the brick building, which the city now seeks to remove, was constructed as far back as 1853 and has stood, without objection or complaint, until the recent institution of this suit. During all that time the city authorities and the public have been content with the use of the alley as it stood.

Of course there is no prescription of the public right, but these circumstances certainly strengthen the contention of the defendant that there was no intention on the part of the owners to dedicate this alley by a width of 20 feet.

We rise from the study of the record with the strong conviction that such was not the intention of the owners in this dedication. The map produced is, confessedly, not the original. There is evidence in the record to show that the first map divided these four blocks precisely as the other blocks were divided, at which time the marginal statements as to dimensions of lots and alleys were consistent and strictly true; that, subsequently, a change was made in the distribution of lots and alleys in these four blocks, and, as this change left the same amount of space for alleys, it was not thought necessary, or was inadvertently omitted, to change the marginal statements. But we are satisfied the owners intended to reserve the same number and dimensions of their lots and to dedicate no greater space to alleys. If such had not been their intention, it seems clear that they would have expressed, in some way, the diminution operated in the size of the lots reduced.

The intent to dedicate is essential to a dedication. That intent may be as clearly expressed in a map or plat as by the clearest language; but when, as in this case, the expression is ambiguous, then the same principles apply in determining the intention as in cases where the dedication is not express, but implied from acts and circumstances. In such case, the law is well established that "though no particular form be requisite, there must be a plain and positive intention to give and one equally plain to accept. The positive assent of the owner and the actual use by the public for the public purposes intended by the appropriation, so as to render it unjust and injurious to reclaim the land, must be shown. And when the dedication is not express, but to be inferred from the acts

or acquiescence of the owner and the use by the public, there must be such as to exclude every other hypothesis but that of dedication."

See authorities cited in Hennen's Dig. Things (a)2), No. 3.

Many authorities are quoted in the opinion of the learned judge *a quo* and in the briefs of counsel; but we think there are no doubtful propositions of law involved in the case and but slight differences between the parties in their legal propositions. We do not differ from the judge *a quo* in his statement of the law which, as usual with him, is learned and accurate; but in our appreciation of the facts and of the application of the law to them we are compelled to take a different view from his.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now adjudged and decreed that there be judgment in favor of the defendant, and rejecting plaintiff's demand at plaintiff's cost in both courts.